**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

RICHARD TURNER,

          Plaintiff,

v.

          Case No. 18-CV-00198-GKF-FHM

PHILLIPS 66 COMPANY, a corporation,

          Defendant.

## OPINION AND ORDER

Before the court is the Motion for Summary Judgment [Doc. 24] of defendant Phillips 66 Company. For the reasons set forth below, the motion is granted as to plaintiff Richard Turner's claims under the Americans with Disabilities Act of 1990 (ADA). Turner's claim pursuant to the Oklahoma Standards for Workplace Drug and Alcohol Testing Act, 40 Okla. Stat. §§ 551 *et seq* ("Oklahoma drug testing statute"), is remanded to the District Court for Tulsa County, Oklahoma.

## I.    Background

Plaintiff Richard Turner previously worked for defendant Phillips 66 Company as a crane operator at the company's refinery located in Ponca City, Oklahoma. Throughout his employment with Phillips 66, Turner was subject to random drug and alcohol testing. Phillips 66's corporate substance abuse policy provided for termination of any employee with a positive drug test. On April 24, 2017, Turner was selected for a random drug and alcohol test. Turner tested positive for amphetamines, and Phillips 66 terminated his employment on April 28, 2017 due to the confirmed positive drug test.

Plaintiff filed this lawsuit asserting claims for violation of the medical inquiry provision of the ADA; discrimination and wrongful termination in violation of the ADA; and violation of the

Oklahoma drug testing statute.[1]  *See* [Doc. 2-1; Doc. 25].  Phillips 66 now seeks summary judgment as to Turner's claims.

## II.    Evidentiary Issues

Before considering Turner's claims, the court must address certain evidentiary issues raised by the parties.  First, in his response brief, Turner objects to certain evidence relied upon by Phillips 66 in support of its summary judgment motion, specifically: (1) the affidavits of Dr. Salvador Valldeperas, a medical review officer for Cynergy, P.A. [Doc. 24-3], Dr. Stephen J. Kracht, Chief Medical Review Officer of Cynergy [Doc. 24-4], and Dr. William C. Parsons, Chief Medical Officer of Phillips 66 [Doc. 24-5]; and (2) a March 8, 2018 letter to Turner from the U.S. Equal Employment Opportunity Commission (EEOC) purporting to enclose a Dismissal and Notice of Right to Sue letter [Doc. 24-1, p. 79].  Additionally, in its reply, Phillips 66 raises evidentiary issues associated with Turner's response, specifically, Turner's reliance on (1) a May 1, 2017 letter from Linda S. Woodruff, APRN-CNP, of the Integris Medford Family Clinic, regarding Turner's prescription medication [Doc. 25-1, p. 3]; (2) documents obtained from the internet regarding "false positives" [Doc. 25-1, pp. 4-5; Doc. 25-5; and Doc. 25-6]; and (3) a June 13, 2017 Order of Decision of the Oklahoma Employment Security Commission (OESC) Appeal Tribunal [Doc. 25-1, pp. 6-8].  The court separately considers each category of evidence.

---

[1] The exact nature of Turner's ADA claim is somewhat amorphous.  In the Petition, Turner states only: "On or about April 28, 2017, Plaintiff was terminated from his employment with Defendant, as a result of illegally-conducted drug testing.  Further, in terminating Plaintiff, Defendant discriminated against Plaintiff under the ADA."  [Doc. 2-1, p. 1, ¶ 3].  In the Joint Status Report, Turner describes his claims only as "violation of drug testing laws" and "violation of ADA."  [Doc. 9, p. 1].  Turner does not articulate the nature of his asserted "disability."  Thus, the court, like Phillips 66, liberally construes the plaintiff's filings and endeavors to address any potential claim raised by Turner.

A. *Affidavits of Valldeperas, Kracht, and Parsons*

Turner argues the affidavits of Valldeperas, Kracht, and Parsons are inadmissible for three reasons: (1) the affiants were not properly disclosed and defendant failed to provide expert reports as required by FED. R. CIV. P. 26; (2) the affiants are not qualified to testify to facts included in their testimony; and (3) the affiants' testimony does not satisfy the *Daubert* standard and is not based on personal knowledge.

First, the court considers Turner's contention that Phillips 66 failed to properly disclose the three medical professional affiants as experts and provide the requisite Rule 26 reports. Pursuant to FED. R. CIV. P. 26(a)(2), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." The disclosure must also be accompanied by a written report—prepared and signed by the witness— but only if "the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." FED. R. CIV. P. 26(a)(2)(B). Thus, not all witnesses that present evidence under Rules 702, 703, or 705 require written reports. For example, district courts within the Tenth Circuit routinely decline to characterize treating physicians as specially retained experts for purposes of FED. R. CIV. P. 26(a)(2)(B). *See Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995) ("To the extent that the treating physician testifies only as to the care and treatment of his/her patient, the physician is not to be considered a specially retained expert notwithstanding that the witness may offer opinion testimony under Fed.R.Evid. 702, 703 and 705."). This is because "[w]here an expert witness has 'formed his opinions in the normal course of his work,' instead of being 'asked to reach an opinion in connection with specific litigation,' the expert is not subject to Rule 26(a)(2)(B)." *Mlsna v. Union Pac. R.R. Co.*, No. 18-CV-37-WMC, 2019 WL 316743, at *2 (W.D. Wis. Jan. 24, 2019)

(quoting *B.H. ex rel. Holder v. Gold Fields Mining Co.,* No. 04-CV-0564-CVE-PJC, 2007 WL 128224, at *3 (N.D. Okla. Jan. 11, 2007)); *see also B.H. ex rel. Holder,* 2007 WL 128224, at *3 ("A key factor in the Court's consideration is how plaintiffs' counsel initially formed a relationship with the witness, such as whether the witness was asked to reach an opinion in connection with specific litigation."); *Huffman v. City of Conroe*, No. H-07-1964, 2008 WL 11391360, at *1 (S.D. Tex. July 10, 2008) (noting the majority of courts have adopted the rule that the report requirement does not apply to "witnesses providing expert testimony because of their involvement in the facts of the case" and collecting cases) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004)); FED. R. CIV. P. 26, cmt to 1970 amend. ("It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.").

In this case, the affiants' testimony is more akin to that of a treating physician than of an expert witness specially retained to provide an opinion in the litigation. Both Valldeperas and Kracht state they became aware of the confirmed positive test result for amphetamine "during the course of conducting [their] job duties while employed by Cynergy." [Doc. 24-3, p. 1; Doc. 24-4, p. 1]. Valldeperas avers he participated in a telephone conversation with Turner regarding the positive test result on April 27, 2017 [Doc. 24-3, p. 1, ¶ 5], and, that same day, Kracht electronically signed the positive Specimen Result Certificate. [Doc. 24-4, p. 1, ¶ 3]. Similarly, Parsons states that he reviewed documents related to the positive test result in May of 2017 in the course of conducting his duties as Phillips 66's Chief Medical Officer. [Doc. 25-5, p. 1, ¶ 4]. Thus, it is clear that the three affiants' testimony is based on their involvement with the facts underlying this case in the course of their normal employment, and the affiants were not asked to provide a special

opinion for purposes of this litigation. Further, plaintiff presents no evidence that any of the affiants regularly provide expert testimony as part of their job duties. Accordingly, the court concludes the affiants were not "retained or specially employed to provide expert testimony" in this case and Rule 26's expert report requirement is inapplicable.

In addition to the report requirement, however, Turner also objects to the affidavits based on Phillips 66's failure to disclose a summary of the facts and opinions to which the witness is expected to testify. *See* FED. R. CIV. P. 26(a)(2)(C) (for witnesses expected to provide evidence pursuant to FED. R. EVID. 702, 703, or 705, "[u]nless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state . . . a summary of the facts and opinions to which the witness is expected to testify"). As other courts in this Circuit have noted,

> there is "scant case law outlining what constitutes a sufficient disclosure under Rule 26(a)(2)(C)." *Chambers v. Fike*, 2014 WL 3565481, at *7 (D. Kan. July 18, 2014). The Advisory Committee for the Federal Rules has cautioned that the Rule 26(a)(2)(C) disclosure "is considerably less extensive than the report required by Rule 26(a)(2)(B)" and that "[c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained." Fed. R. Civ. P. 26 advisory committee notes, 2010 amendments. At a minimum, however, a disclosure must "obviate the danger of unfair surprise regarding the factual and opinion testimony of the non-retained expert" and "contain more than a passing reference to the general type of care a treating physician provided." *Chambers*, 2014 WL 3565481, at *7. Additionally, while a disclosure need not "outline each and every fact to which the non-retained expert will testify or outline the anticipated opinions in great detail," it should "provide a brief account that states the main points of the entirety of the anticipated testimony." *Id.* (internal quotation marks omitted).

*Seeley v. Home Depot U.S.A., Inc.*, No. 17-CV-00584-PAB-NYW, 2018 WL 4275375, at *4 (D. Colo. Sept. 7, 2018). Phillips 66's initial Rule 26 disclosures and preliminary witness and exhibit lists state only that Kracht and Valldeperas have knowledge regarding the drug testing performed on Turner and communications with Turner and Phillips 66 medical staff regarding the same.

[Doc. 25-2, pp. 3, 5, and 8]. Phillips 66 implicitly concedes that it failed to disclose Parsons as a witness. *See* [Doc. 29, p. 9]. Although the Rule 26(a)(2)(C) requirement is considerably less extensive than that of Rule 26(a)(2)(B), the court is not persuaded that Phillips 66's bare assertions satisfy the disclosure requirement. Further, Turner avers, and Phillips 66 submits no evidence to contradict, that Phillips 66 provided no further disclosures regarding the testimony. *See* [Doc. 25-2, p. 1, ¶ 5]. Thus, the court concludes that Phillips 66 failed to satisfy Rule 26(a)(2)(C)'s disclosure requirements with respect to Valldeperas, Kracht, and Parsons. However, Phillip 66's failure to satisfy FED. R. CIV. P. 26(a)(2)(C), standing alone, does not preclude the court from considering the affidavits in the summary judgment determination.

Failure to disclose pursuant to Rule 26 may subject the deficient party to sanctions under FED. R. CIV. P. 37(c), which states: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . *unless the failure was substantially justified or is harmless*." FED. R. CIV. P. 37(c)(1) (emphasis added). "[T]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1191-92 (10th Cir. 2009) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999)). To make the determination, the court should be guided by the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc.*, 170 F.3d at 993.

Turner does not articulate any prejudice or surprise he suffered as a result of the affidavits, and the court is unable to identify any potential prejudice or surprise to Turner based on the record

before it.[2]  Further, any prejudice that did arise can be cured, without disruption to trial, through supplemental disclosures by Phillips 66.[3]  *See Seeley*, 2018 WL 4274375, at *5.  Finally, Turner does not assert that Phillips 66 acted in bad faith, and the court sees no evidence of bad faith or willfulness by Phillips 66.  Accordingly, the *Woodworkers* factors all weigh against exclusion of the affidavits, and the court overrules Turner's Rule 26(a) objection.

Turner next contends that the affiants are unqualified to offer testimony as to "what happens in a lab generally, nor what happened in the lab testing in this case."  [Doc. 25, p. 4].  However, both Kracht and Valldeperas state that they were medical doctors, certified Medical Review Officers, and employees of Cynergy, the company that provided Medical Review Officer ("MRO") services to Phillips 66.  *See* [Doc. 24-3, p. 1; 24-4, p. 1].  Parsons is also a medical doctor and certified MRO, and avers that he is familiar with the drug testing procedures adopted and approved by Phillips 66.  [Doc. 24-5, p. 1, ¶¶ 1-2].

With respect to urine samples, Phillips 66 has adopted the standards of the Department of Transportation.  *See* [Doc. 24-1, p. 42 ("In general, collection and analysis of urine specimens shall follow the procedures of the U.S. Department of Transportation.")].  Federal regulations promulgated by the Department of Transportation require a Medical Review Officer to receive qualification training regarding collection procedures for urine specimens; chain of custody, reporting, and recordkeeping; and interpretation of drug and validity tests results.  49 C.F.R. § 40.121(c).  Oklahoma law also requires that Medical Review Officers have knowledge and training to interpret and evaluate lab test results, together with relevant information.  40 OKLA. STAT. §

---

[2] Turner can hardly claim unfair surprise with respect to Kracht, who electronically signed the positive Specimen Result Certificate that is at the root of his claims. Further, Phillips 66 represents that Turner identified Parsons as a witness in his Rule 26 disclosures.  *See* [Doc. 29, p. 9].

[3] Trial in this matter is not scheduled to begin until May 20, 2019.  *See* [Doc. 15, p. 2].

552(11).  As previously stated, the affiants are certified Medical Review Officers and therefore the court concludes that the affiants are sufficiently qualified to testify regarding lab testing procedures.

Turner also objects to the affiants as lacking personal knowledge.  It is well-established that "[a]n affiant's personal knowledge may be 'reasonably inferred from [his or her] position[] and the nature of [his or her] participation in the matters [addressed in the affidavit]." *Salt Lake City Corp. v. Sekisui SPR Americas, LLC,* No. 17-CV-01095-JNP-BCW, 2018 WL 4688356, at *2 n. 4 (D. Utah Sept. 28, 2018) (quoting *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990)).  Kracht and Valldeperas' personal knowledge may be reasonably inferred by virtue of their employment with Cynergy, the company that provided MRO services to Phillips 66, and their respective participation in the positive drug test that forms the basis of this case.[4] Similarly, as previously stated, Parsons avers he is the Chief Medical Officer for Phillips 66; pursuant to that position he became familiar with the drug testing procedures adopted and approved by Phillips 66; and that he reviewed documents related to Turner's positive drug test.  [Doc. 24-5, p. 1].  Thus, the affidavit provides sufficient factual basis for Parsons' statement, and the court concludes Parsons' affidavit reflects matters of which he would have personal knowledge. Accordingly, the court overrules Turner's objection.

Finally, Turner contends that Parsons' statements are inadmissible as mere statements of belief, rather than opinions.  The Tenth Circuit has stated, to be reliable under *Daubert*, the expert's testimony must be "based on actual knowledge, not 'subjective belief or unsupported speculation.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Daubert v.*

---

[4] Turner also argues that the affiants' certification that GC/MS testing was used is not based on personal knowledge because the drug testing reports indicate to the contrary.  However, Turner's contention bears on the weight of the evidence, not its admissibility.

*Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590 (1993)).  Turner correctly notes that, at various points in his affidavit, Parsons states that he "does not believe" certain contentions, including that Turner's use of over-the-counter medication would cause a "false positive"; that the negative hair sample taken four days later undermines the earlier positive result; or that a drug would be detectable in Turner's urine four days after the April 24 random drug test.  [Doc. 24-5, p. 2, ¶ 4 [*sic*] 5].  However, when viewed in the context of the entirety of the affidavit, it is clear that, to reach his opinions, Parsons relied on his thirty-four (34) years of experience as a physician and training as a certified Medical Review Officer.  [*Id.* p. 1, ¶¶ 1-2].  Parsons also reviewed and relied on Phillips 66's substance abuse policy [*Id.* ¶ 2], as well as an Alere Drug Test Report, an eScreen Specimen Result Certificate, a May 1, 2017 letter from Turner, the May 1, 2017 letter from Woodruff, a Quest Diagnostics Laboratory Report, a second eScreen Specimen Result Certificate, a May 10, 2017 letter from Turner, a Nationwide Medical Review report depicting results of a hair follicle sample, and a May 17, 2017 Memorandum for the Record reflecting Kracht's conversations with Turner.  [*Id.* ¶ 4].  Additionally, Parsons refers to DOT Regulations.  [*Id.*].  Based on the foregoing, the court concludes that Parsons' affidavit offers opinions based on actual knowledge, rather than mere belief or speculation, and is therefore admissible.

B.      *EEOC Letter*

 Turner next objects to Phillips 66's reliance on a March 8, 2018 letter from the EEOC regarding a Charge of Discrimination filed by Turner, and argues that the letter is not admissible. Phillips 66 cites the letter for the proposition that, in the letter, the EEOC stated:

> After review of your information, the Commission has determined it is unlikely that we will be able to establish a violation of statute(s) has occurred.  There is insufficient evidence to show that the employer regarded you as disabled.

[Doc. 24, p. 6, ¶ 29]. Although Turner objects to the March 8 letter as inadmissible, Turner submits the Dismissal and Notice of Rights apparently enclosed in the letter in support of his summary judgment response as evidence that he received a Right to Sue Letter. [Doc. 25-1, p. 2 and 9-10]. The Tenth Circuit has held that whether an agency report is admissible into evidence rests within the discretion of the trial court. *Hall v. W. Prod. Co.*, 988 F.2d 1050, 1057 (10th Cir. 1993). "[I]n civil actions, agency reports are admissible under Fed.R.Evid. 803(8)(C) if they are prepared pursuant to authority granted to the agency by law and are trustworthy." *Id.* at 1057-58. "This rule covers both factual findings and 'conclusions and opinions found in evaluative reports of public agencies.'" *Id.* at 1058 (quoting *Perrin ex rel. Perrin v. Anderson*, 784 F.2d 1040, 1047 (10th Cir. 1986)). However, this court has previously declined to conclude that agency decisions, standing alone, create a genuine issue of material fact for purposes of summary judgment. *See White v. Oklahoma*, No. 12-CV-88-GKF-FHM, 2013 WL 6074159, at **6-7 (N.D. Okla. Nov. 18, 2013), *affirmed, White v. Oklahoma,* 552 F. App'x 840 (10th Cir. 2014). Notably, Phillips 66 does not rely on the EEOC letter in its argument in support of summary judgment as evidence that Turner cannot establish a violation of the ADA or Oklahoma drug testing statute. Nevertheless, for purposes of summary judgment, the court limits its consideration of the March 8 letter as evidence that Turner received a Dismissal and Notice of Right to Sue Letter from the EEOC.

The court now turns to Phillips 66's objections to Turner's evidence.

C.      *May 1, 2017 letter from Linda S. Woodruff, APRN-CNP*

With his response brief, Turner submits a May 1, 2017 letter from Linda S. Woodruff, APRN-CNP, of the Integris Medford Family Clinic. *See* [Doc. 25-1, p. 3]. The letter states, in part: "Richard's medication includes OTC Sudafed, also Zantac, Prilosec. Prescription med's include Mobic, Neurontin, Proscar. I am happy to assist with any future labs for Richard. Richard

does have medical conditions that require the above listed medications." [*Id.*]. Turner cites the letter as evidence that his taking of Sudafed was approved by his medical care provider. [*Id.* p. 1, ¶ 4]. Phillips 66 objects to the letter as hearsay.

Federal Rule of Evidence 801 defines hearsay as an out-of-court statement offered to prove the truth of the matter asserted. FED. R. EVID. 801(c). Hearsay is inadmissible pursuant to FED. R. EVID. 802 unless a federal statute or rule provides otherwise. Federal Rule of Evidence 803 includes exceptions to the general prohibition against hearsay, including an exception for records of a regularly conducted activity of a business or organization provided that the record was "kept in the course of a regularly conducted activity" of the business and "making the record was a regular practice of that activity."[5] FED. R. EVID. 803(6). The Tenth Circuit has previously concluded a letter documenting a patient's diagnosis and treatment fell within the business record exception to the hearsay rule. *See Higgins v. Martin Marietta Corp.*, 752 F.2d 492, 497 (10th Cir. 1985). However, to be admissible pursuant to Rule 803(6)'s business records exception, Turner, as the proponent of the evidence, must offer "testimony of the custodian or another qualified witness, or . . . a certification that complies with Rule 902(11) or (12) or with a statute permitting certification" that the other conditions of Rule 803(6) are satisfied. FED. R. EVID. 803(6)(D); *see also Farmers All. Mut. Ins. Co. v. Naylor*, 452 F. Supp. 2d 1167, 1176-77 (D.N.M. 2006) (quoting *IBP, Inc. v. Mercantile Bank of Topeka*, 6 F. Supp. 2d 1258, 1263 (D. Kan. 1998)) ("[B]usiness records, which normally would be admissible at trial under the hearsay exception set forth at [Rule 803(6) of the Federal Rules of Evidence], may be considered only if authenticated by a person through whom the exhibits could be admitted into evidence."). Testimony of a custodian or

---

[5] Though it is not raised, the hearsay exception of Rule 803(4)—statements made for medical diagnosis or treatment—is inapplicable as the exception does not apply when the medical professional is the declarant. *See Berry v. Lewis Trucking & Grading,* No. 06-CV-0041-JEC-AJB, 2007 WL 9701930, at *17 (N.D. Ga. Mar. 23, 2007).

qualified witness did not accompany the May 1 letter.[6]  Because the proponent of hearsay evidence bears the burden of establishing the applicability of a hearsay exception, and Turner has not done so, the court generally would not consider the letter.

However, Phillips 66 does not argue that the letter "cannot be presented in a form that would be admissible in evidence," FED. R. CIV. P. 56(c)(2), and the letter includes indicia of reliability because it appears on Integris Medford Family Clinic letterhead.  Further, the court notes that *Phillips 66* also relies on the letter to support its undisputed fact no. 16 that, on April 24, 2017, Turner had not been prescribed amphetamines.  *See* [Doc. 24, p. 4, ¶ 16 (citing Ex 23 (TURPSX00000619)].  Accordingly, Phillips 66 has not shown a lack of trustworthiness.

Additionally, FED. R. EVID. 807 provides a residual exception pursuant to which a hearsay statement that is not specifically covered by a hearsay exception is admissible if:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice.

FED. R. EVID. 807(a).  As previously stated, the letter includes indicia of reliability, and is probative as to Turner's prescription medication.  Further, the court is persuaded that considering the letter on summary judgment will best serve the purpose of the rules and the interests of justice as both parties cite the letter in their briefs.  Thus, the court will consider the letter.

### D.     *Documents Regarding Sudafed and "False Positives"*

Phillips 66 next objects to various exhibits submitted by Turner regarding Sudafed and "false positives" for amphetamines as a result of allergy medications—specifically, the "How Our

---

[6] To the extent that Turner relies on his own affidavit to authenticate Woodruff's letter, that is insufficient.  *See Prager v. Campbell Cnty. Mem'l Hosp.,* No. 10-CV-202-J, 2011 WL 13142118 (D. Wyo. Sept. 1, 2011).

Products Work" page from https://www.sudafed.com; a February 26, 2008 release from the Oklahoma Bureau of Narcotics and Dangerous Drugs Control regarding "Statute Change Allowing for Additional Identification to Be Used for Purchase of Pseudoephedrine"; and an article titled "Drug Tests Often Trigger False Positives: Poppy Seeds, Cold Medications Can Trigger False Alarms," dated May 28, 2010, from *WebMd*.

With respect to the two internet articles—the first from Sudafed.com and the second from *WebMd*—the court concurs with Phillips 66 that the articles constitute inadmissible hearsay. *See Stine v. Lappin*, No. 08-CV-00164-WYD-KLM, 2009 WL 482630, at *5 (D. Colo. Feb. 25, 2009). Turner offers the out-of-court statements of the authors for the truth of the matter asserted—that Sudafed is made with pseudoephedrine and may result in false positives. This is classic hearsay. However, with respect to the *WebMd* article, it appears that the article was enclosed by Woodruff in her May 1 letter, which was provided to Phillips 66. The court will consider the *WebMd* article only to show that that Phillips 66 had notice of the potential that certain cold medications may trigger a false positive. *See Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1090 (10th Cir. 2001).

As for the Oklahoma Bureau of Narcotics release, dated February 26, 2008, the court may take judicial notice of official government publications. *High Desert Relief, Inc. v. United States*, 917 F.3d 1170 (10th Cir. Mar. 5, 2019). Accordingly, defendant's objection to the 2008 release is overruled.

E.    *June 13, 2017 Order of Decision of the OESC Appeal Tribunal*

Finally, Phillips 66 argues the OESC Order is inadmissible evidence pursuant to 40 Okla. Stat. § 2-610.1. Section 2-610.1 provides:

Any findings of fact or law, judgment, conclusion or final order made by the Oklahoma Employment Security Commission, its referees, the Appeal Tribunal or

> Board of Review in an unemployment insurance proceeding shall not be conclusive or binding in any separate or subsequent action or proceeding, and shall not be used as evidence in any separate or subsequent action or proceeding, between an individual and his or her present or prior employer in any other forum regardless of whether or not the prior action was between the same or related parties or involved the same facts.

40 Okla. Stat. § 2-610.1. Oklahoma federal courts are split as to whether section 2-610.1 applies to federal claims. *Compare Barley v. Wal-Mart Stores E., LP*, No. 07-CV-0240-CVE-PJC, 2008 WL 1732945, at *4 n. 6 (N.D. Okla. Apr. 10, 2008) (declining to consider evidence of OESC proceedings with respect to Title VII claim) *with Miller v. Love's Travel Stops & Country Stores*, Inc., No. CIV-06-1008-D, 2008 WL 11338078, at *1 (W.D. Okla. May 12, 2008). However, Oklahoma federal courts are unanimous that OESC decisions are not binding upon federal courts. *See Barley*, 2008 WL 1732945, at *4 n. 6; *Miller*, 2008 WL 11338078, at *1; *Dillman v. Winchester*, 639 F. Supp. 2d 1257, 1268 (W.D. Okla. 2009) ("OESC decisions are not binding upon this Court."). Although not binding upon the court, the court concludes that neither party will be prejudiced by the court's consideration of the decision, as Phillips 66 had the opportunity to respond to the OESC Order in its reply brief. *See Nettle v. Cent. Okla. Am. Indian Health Council, Inc*., No. CIV-05-1288-W, 2007 WL 9711267, *4 n. 1 (W.D. Okla. Nov. 19, 2007). Thus, the court will consider the OESC decision with the recognition that it is not binding upon this court.

## III.    Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). The inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986).

## IV.    Undisputed Material Facts

The following facts are undisputed for summary judgment purposes:

In 2008, Richard Turner began working for a predecessor company of Phillips 66 at the company's Ponca City, Oklahoma refinery as a crane operator. [Doc. 24, p. 2, ¶ 2; Doc. 25, pp. 1-6]. Throughout the course of his employment with Phillips 66 and its predecessor company, Turner was subject to drug and alcohol testing. [Doc. 24, p. 2, ¶ 3; Doc. 25, pp. 1-6]. Phillips 66 adopted a drug testing policy that included the "US Substance Abuse Policy," "US Substance Abuse Policy Oklahoma Addendum," and "U.S. Substance Abuse Company Non-DOT Procedures." [Doc. 24, pp. 2-3, ¶ 4; Doc. 25, pp. 1-6; Doc. 24-1, pp. 31-57]. Throughout his employment with Phillips 66, Turner had access to the "US Substance Abuse Policy," "US Substance Abuse Policy Oklahoma Addendum," and "U.S. Substance Abuse Company Non-DOT Procedures" through Phillips 66's intranet. [Doc. 24, pp. 2-3, ¶ 4; Doc. 25, pp. 1-6].

Pursuant to the "US Substance Abuse Policy Oklahoma Addendum" and "U.S. Substance Abuse Company Non-DOT Procedures," Phillips 66's Oklahoma employees were subject to testing for amphetamines, as well as cannabinoids, cocaine, opiates, and phencyclidine (PCP). [Doc. 24-1, pp. 34 and 37].[7] Phillips 66 utilized urine sample methodology to conduct random and post-accident drug testing of its Oklahoma employees. [Doc. 24, p. 3, ¶ 11; Doc. 25, pp. 1-6; Doc. 24-1, pp. 34]. In 2017, Phillip 66's Medical Review Officer for the drug testing policies was Cynergy, P.A. [Doc. 24, p. 3, ¶ 9; Doc. 25, pp. 1-6; Doc. 24-1, p. 43].

According to the US Substance Abuse Policy: "[a]ny employee with a confirmed positive drug . . . test will be terminated." [Doc. 24, p. 3, ¶ 6; Doc. 25, pp. 1-6; Doc. 24-1, p. 32]. However, with regard to Oklahoma employees, Phillips 66's "US Substance Abuse Policy Oklahoma Addendum" requires a MRO who receives a confirmed positive result to "contact the employee directly (e.g., actually talk to the employee), on a confidential basis, to determine whether the employee wants to discuss the test result." [Doc. 24, p. 3, ¶ 8; Doc. 25, pp. 1-6; Doc. 24-1, p. 35]. Further, Phillips 66's drug testing policy provides Oklahoma employees an appeal procedure "for the limited purpose of appealing terminations involving the unauthorized use of a prescription drug." [Doc. 24, p. 3, ¶ 10; Doc. 25, pp. 1-6; Doc. 24-1, p. 35].[8]

---

[7] Turner contends this fact is disputed because (1) Phillips 66 tested for a substance other than that permitted under the policy, (2) Phillips 66 denied production of documentation regarding Turner's positive drug test as "irrelevant," (3) Phillips 66 previously failed to abide by the Oklahoma drug testing statute, and (4) the testing was not confirmed with GC/MS. *See* [Doc. 25, pp. 5-6]. Turner's arguments bear on the legality of the test conducted, not whether Oklahoma employees were subject to testing for amphetamines, and therefore no genuine dispute of material fact exists.

[8] Turner argues this fact is disputed because "[r]egardless of what the Defendant drug testing policy may have provided, Plaintiff was afforded an appeal of his termination, which, again, did not consider his disability or the medication for the disability or its effects, but rather terminated him in spite thereof." [Doc. 25, p. 3, ¶ 9]. Turner's objection to Phillips 66's offered material fact constitutes argument. It is well established that "argument of counsel is not evidence, and cannot provide a proper basis to deny summary judgment." *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d

On April 24, 2017, Turner was informed that he had been selected for a random drug and alcohol test. On that same day and less than an hour after he had been informed of his selection for testing, Turner reported to the Phillips 66 medical facility in Ponca City and supplied a urine sample for testing. [Doc. 24, p. 3, ¶ 12; Doc. 25, pp. 1-6]. The urine sample provided by Turner was tested by Alere laboratory. [Doc. 24, p. 5, ¶ 19; Doc. 25, pp. 1-6; Doc. 24-4, p. 1, ¶ 4; Doc. 24-4, p. 2]. On April 27, 2017, Turner received a call from a doctor regarding his April 24 urine sample. [Doc. 24, p. 4, ¶ 15; Doc. 25, pp. 1-6]. During that telephone conversation, the MRO advised Turner that Turner had tested positive for amphetamines. [Doc. 24-1, p. 14, 73:1-25; Doc. 24-3; Doc. 24-4]. At the time Turner provided the April 24 urine sample, he had not been prescribed amphetamines. [Doc. 24-1, pp. 66-67]. Turner took over-the-counter Sudafed, Zantac, and Prilosec. [Doc. 24-1, pp. 66-67; Doc. 24-1, p. 20, 100:16 to 101:21].

On April 27, 2017, Phillips 66 received a Specimen Result Certificate from its third-party administrator, eScreen, of a confirmed positive test result for amphetamines for the urine sample provided by Turner on April 24, 2017 as part of the random testing. The Specimen Result Certificate was signed by MRO Dr. Stephen J. Kracht of Cynergy. [Doc. 24-2, p. 1, ¶ 3; Doc. 24-4, pp. 1-2]. On April 28, 2017, Phillips 66 discharged Turner from his employment. The termination letter stated Turner's employment was terminated "for a positive drug test." [Doc. 24-1, p. 63].[9]

---

1052, 1061 (10th Cir. 2009). Further, whether the appropriate appeal procedure *was followed* does not create a genuine dispute regarding the procedure as written.

[9] Turner attempts to dispute the foregoing facts with argument and evidence directed to whether Turner's taking Sudafed could have resulted in a "false positive." However, regardless of whether the positive test result was false, the evidence put forth by Turner does not dispute that his April 24 urine sample resulted in a positive result of amphetamines or that Phillips 66 terminated Turner for that reason.

Turner subsequently appealed the termination decision to Phillips 66. [Doc. 24, p. 5, ¶ 21; Doc. 25, pp. 1-6]. On or about May 9, 2017, Phillips 66 received notification of a Specimen Result Certificate from e-Screen of a second confirmed positive test result for amphetamines for the urine sample submitted by Turner on April 24, 2017. Kracht signed the May 9 Specimen Result Certificate. [Doc. 24-4, pp. 1 and 3; Doc. 24-2, p. 1, ¶ 4]. The second analysis of the April 24 urine sample was conducted by Quest Diagnostics Laboratory. [Doc. 24, p. 5, ¶ 24; Doc. 25, pp. 1-6; Doc. 24-4, p. 1, ¶ 4; Doc. 24-4, p. 3].[10] A representative of Cynergy again spoke with Turner regarding the second positive result. [Doc. 24-3, p. 1, ¶ 5; Doc. 24-3, p. 4; Doc. 24-1, pp. 21-22, 105:22 to 106:24; Doc. 24-1, p. 23, 110:18 to 111:14]. During one of his conversations with Cynergy, Turner provided information regarding his prescription medications, as well as those of his wife and child. [Doc. 24-3, p. 1, ¶ 5; Doc. 24-3, p. 4; Doc. 24-1, pp. 21-22, 105:22 to 106:24; Doc. 24-1, p. 23, 110:18 to 111:14; Doc. 25-1, p. 1, ¶ 6]. Turner testified that he provided the information in light of the positive test result because "[they] were trying to figure out what was going on." [Doc. 24-1, p. 23, 110:18 to 111:2].

Phillips 66 denied Turner's appeal of his termination. [Doc. 24-1, p. 77; Doc. 24-1, p. 23, 112:9-23]. On October 31, 2017, Turner filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging disability discrimination. [Doc. 24, p. 6, ¶ 28; Doc. 25, pp. 1-6; Doc. 24-1, p. 78]. The Charge of Discrimination includes the following allegations:

1. Employer required medication information of me beyond what was business-related and consistent with business necessity because I took Sudafed and/or Zantac, neither of which interefered [*sic*] with my job or its performance.

2. Employer considered me disabled/unable to do my job for reasons set forth in 1 above.

---

[10] *See supra* n. 9.

3. At all times, I was capable of doing my job safely and appropriately.

4. Nevertheless, Employer fired me in discrimination as set forth above.

[Doc. 24-1, p. 78]. On March 8, 2018, the EEOC issued a Dismissal and Notice of Right to Sue Letter with respect to Turner's EEOC claim. [Doc. 25-1, pp. 9-10].

## V. Analysis

As previously stated, Turner asserts claims under the ADA and Oklahoma drug testing statute. The court separately considers each claim.

### A. ADA Claim

The Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 (ADAAA), prohibits employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). In the absence of direct evidence of discrimination, the court applies the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). At the summary judgment stage, the *McDonnell-Douglas* framework involves three steps:

(1) the plaintiff must establish a prima facie case of discrimination or retaliation; (2) the defendant employer must offer a legitimate non-discriminatory reason for the adverse employment action; and (3) the plaintiff must show there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual.

*Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). "To establish a prima facie case of discrimination under the ADAAA, a plaintiff must show that (1) he is disabled as defined under the ADAAA; (2) he is qualified, with or without reasonable accommodation by the employer, to perform the essential functions of the job; and (3) he was discriminated against

because of his disability." *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016). The ADAAA defines "disability," with respect to an individual as

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1).

Turner asserts three bases for his ADA claim: an improper medical inquiry claim; a "regarded as" ADA claim; and a traditional ADA claim premised on a physical impairment that substantially limits one or more major life activities. The court first considers the improper medical inquiry claim.

### 1. § 12112(d)(4)(A) Claim

The ADA generally prohibits medical examinations and inquiries, and section 12112(d)(4)(A) specifically provides:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A). "A plaintiff asserting a claim under § 12112(d)(4)(A) must show (1) that he is an employee of the defendant-employer, and (2) that the defendant-employer required him to undergo a medical examination or made a disability-related inquiry of him." *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 901 (10th Cir. 2017). The plaintiff need not prove he is disabled. *Id.* It is undisputed that Turner was an employee of Phillips 66 and, therefore, the court

focuses its inquiry on whether Phillips 66 required Turner to undergo a medical examination or made a disability-related inquiry of him.

"[A] test to determine the illegal use of drugs shall not be considered a medical examination." 42 U.S.C. § 12114(d)(1). *See also* 29 C.F.R. § 1630.16(c)(1) ("[A] test to determine the illegal use of drugs is not considered a medical examination. Thus, the administration of such drug tests by a covered entity to its job applicants or employees is not a violation of" the general prohibition against medical examinations or disability-related inquiries).[11] It is undisputed that Phillips 66's drug testing policy permitted testing for cannabinoids[12], cocaine, opiates, phencyclidine (PCP), and amphetamines—all of which are controlled substances.[13] [Doc. 24-1, pp. 34 and 37; 21 U.S.C. § 812]. Thus, the undisputed evidence demonstrates that Phillips 66 conducted a test to determine the illegal use of drugs and therefore the test does not constitute a "medical examination" for purposes of the ADA.

Turner argues that the April 24 test was not for the illegal use of drugs because the test obtained a "false positive" based on Turner's use of the over-the-counter medication Sudafed at the recommendation of his healthcare provider. However, Turner's argument attempts to fit a square peg into a round hole. As previously stated, it is undisputed that Phillips 66's policy permitted drug testing only for five (5) illegal drugs and Turner offers no evidence that Phillips 66 intended to screen for lawful drugs, including over-the-counter or prescription medication. *Cf.*

---

[11] The court concludes that the EEOC regulation is consistent with, and a reasonable interpretation of, 42 U.S.C. § 12112(d)(4), and is entitled to deference. *Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc.,* 467 U.S. 837, 844 (1984)).

[12] The court notes that the April 24, 2017 drug test occurred prior to the passage of State Question 788, which legalized medical marijuana under Oklahoma law.

[13] Turner also claims that Phillips 66 impermissibly tested for MDMA, more commonly known as ecstasy. MDMA is also a schedule I controlled substance. *See* 21 U.S.C. § 812.

*Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1226, 1231 (10th Cir. 1997) (employer's written policy required employee to report, without qualification, all drugs used, including prescription drugs); *Williams*, 849 F.3d at 895 (employer required employee to disclose use of prescription medication). Turner cites no authority for the proposition that a test for illegal drugs becomes a prohibited "medical examination" solely by virtue of a false positive, nor has the court identified any. In fact, the Interpretative Guidance on Title I of the Americans with Disabilities Act contemplates that a test for illegal drugs may reveal additional information, and provides:

> Tests for the illegal use of drugs are not considered medical examinations for purposes of this part. If the results reveal information about an individual's medical condition beyond whether the individual is currently engaging in the illegal use of drugs, this additional information is to be treated as a confidential medical record. *For example, if a test for the illegal use of drugs reveals the presence of a controlled substance that has been lawfully prescribed for a particular medical condition, this information is to be treated as a confidential medical record.*

29 C.F.R. app. § 1630.16(c) (2016) (emphasis added). Further, adoption of Turner's position would have a chilling effect on an employer's ability to screen for illegal drugs and undercut the employer's ability to "prohibit the illegal use of drugs . . . at the workplace by all employees." 42 U.S.C. § 12114(c)(1). Thus, Turner was not subject to an unlawful "medical examination" as a matter of law.

The court next considers whether Phillips 66 made an unlawful "disability-related inquiry" of Turner. The ADA does not prohibit all medical inquiries. Rather, the statute prohibits only "disability-related inquiries"—that is, inquiries directed "to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). The EEOC's *Enforcement Guidance: Disability-Related Inquiries and Medical*

*Examinations of Employees Under the Americans with Disabilities Act (ADA)* is instructive to the court. *See* 2000 WL 33407181 (E.E.O.C. Guidance July 27, 2000). The EEOC's 2000 Guidance defines a "disability-related inquiry" as "a question (or series of questions) that is likely to elicit information about a disability." 2000 WL 33407181, at *3. "The same standards for determining whether a question is disability-related in the pre- and post-offer stages apply to the employment stage." *Id.*

At the employment stage, the EEOC Enforcement Guidance permits an employer to question an employee regarding his "current illegal use of drugs." *Id.* Further, pursuant to the *ADA Enforcement Guidance: Preemployment Disability-Related Questions and Medical Examinations*, an employer may ask an employee about their *lawful* drug use if the employer is administering a test for illegal use of drugs and the employee tests positive for illegal drug use. 1995 WL 1789073, at *6 (E.E.O.C. Guidance Oct. 10, 1995). "In that case, the employer may validate the test results by asking about lawful drug use or possible explanations for the positive result other than the illegal use of drugs." *Id.*; *see also* 2000 WL 33407181, at *3 ("The same standards for determining whether a question is disability-related in the pre- and post-offer stages apply to the employment stage.").

It is undisputed that Turner provided information to Phillips 66's MRO about his lawful medications, as well as those of his wife and child. *See* [Doc. 24-3, p. 1, ¶ 5; Doc. 24-3, p. 4; Doc. 24-1, pp. 21-22, 105:22 to 106:24; Doc. 24-1, p. 23, 110:18 to 111:14; Doc. 25-1, p. 1, ¶ 6]. Turner contends the MRO's inquiry regarding prescription medication is an unlawful "disability-related inquiry." However, pursuant to the *EEOC Enforcement Guidance*, which is persuasive to this court, an employer may validate a positive test result obtained from a test for illegal drugs by asking about lawful drug use or possible explanations for the positive result. It is undisputed that

the April 24 drug test indicated positive for amphetamine, initially and upon testing of the split

sample. [Doc 24-4, pp. 1-2]. Turner presents no evidence that Phillips 66 inquired regarding his

or his family's prescription medication prior to the positive drug test. Rather, the undisputed

evidence demonstrates the conversation occurred *after* the positive drug test. Further, it is

undisputed that Turner testified that he provided information regarding he and his family's

prescription medication because "[they] were trying to figure out what was going on" with the

second positive test result. [Doc. 24-1, p. 23, 110:18 to 111:2]. Thus, construed in the light most

favorable to Turner, the undisputed facts demonstrate that any inquiries were directed to possible

explanations for the positive drug-test result other than the illegal use of drugs. Turner offers no

evidence from which a reasonable juror could infer that inquiries directed to Turner or his family's

medications were likely to elicit information about a disability in violation of the ADA.[14] Thus,

no genuine dispute of material fact exists as to whether Phillips 66 made an improper "disability-

---

[14] Although not cited by Turner, the court notes that, in a case cited by the Tenth Circuit in *Williams*, the Eleventh Circuit reversed a district court's grant of summary judgment as to whether an employer's questions to the plaintiff regarding prescription medication following a positive drug test were unlawful disability-related inquiries. *See Williams*, 849 F.3d at 901 (citing *Harrison v. Benchmark Elecs. Huntsville, Inc*., 593 F.3d 1206 (11th Cir. 2010)). However, *Harrison* is factually distinguishable from this case. In *Harrison*, the employer was notified of the positive drug test result while awaiting review by a Medical Review Officer. The plaintiff's supervisor informed plaintiff of the positive result, plaintiff responded that he had a prescription, and the supervisor asked that plaintiff retrieve it. The supervisor then called the MRO, passed the phone to plaintiff, and stood in the office while plaintiff responded to a series of questions, including "how long he had been disabled." Plaintiff replied he had epilepsy since he was two years old and took barbiturates to control it. *Harrison,* 593 F.3d at 1210. Based on these facts, the Eleventh Circuit concluded: "A reasonable jury could infer that [the supervisor's] presence in the room was an intentional attempt likely to elicit information about a disability in violation of the ADA's prohibition against pre-employment medical inquiries. On summary judgment, we must give [plaintiff] the benefit of that inference." *Id.* at 1216. Here, Turner presents no evidence that Phillips 66 participated in his conversations with the MRO, or that the MRO directed any questions to a "disability." Rather, the undisputed evidence indicates only that the MRO received information regarding medications.

related inquiry" of Turner and Phillips 66 is entitled to summary judgment as to Turner's § 12112(d)(4)(A) claim.

2.    "Regarded As" Claim

The court next turns to Turner's "regarded as" claim.  Phillips 66 contends it is entitled to summary judgment on this claim because Turner cannot establish a prima face case of discrimination.

To establish a "regarded as" claim, the plaintiff must show that he "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).  Pursuant to the ADAAA amendments, plaintiff no longer need prove that the actual or perceived impairment substantially limits a major life activity.  *Adair*, 823 F.3d at 1306.  However, the ADAAA amendments retain the qualification that a plaintiff cannot establish a "regarded as" claim for "impairments that are transitory and minor."  *Id.*; *see also* 42 U.S.C. § 12102(3)(B).  Thus, "[u]nder the ADAAA, for a plaintiff alleging disability discrimination to show that the employer regarded him as having an impairment, the plaintiff must show that (1) he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action."  *Adair*, 823 F.3d at 1306.  Turner's "regarded as" claim fails on both the second and third element.

Here, Tuner contends his allergies constitute an actual impairment.  Even assuming Turner's allergies qualified as an actual impairment, Turner presents no evidence that his allergies were neither transitory nor minor.  The ADAAA defines "transitory impairment" as "an impairment with an actual or expected duration of 6 months or less."  42 U.S.C. § 12102(3)(B).

With respect to the duration of his impairment, Turner presents evidence only that "[a]t the time around [his] termination, [he] suffered from allergies." [Doc. 25-1, p. 1, ¶ 3]. Although Turner refers to "flare ups," the record includes no evidence from which the court may infer that these "flare ups" were expected to persist for over six (6) months.

Additionally, Turner fails to present evidence directed to the third element of the "regarded as" inquiry. Turner presents no evidence that Phillips 66 viewed him as unable to work due to his allergies. In fact, the record is devoid of any evidence that Phillips 66 even *knew* of Turner's allergies. Thus, no genuine dispute of material fact exists as to whether Phillips 66 regarded Turner as disabled under the ADAAA. *See Jennings v. AAON, Inc*., No. 14-CV-0347-CVE-PJC, 2015 WL 3465834, at *7 (N.D. Okla. June 1, 2015). To the extent that Turner relies on the fact that Phillips 66 made Sudafed available to employees, no reasonable finder of fact could conclude that Phillips 66's general knowledge that some employee may suffer from allergies is insufficient to create a dispute as to whether Phillips 66 regarded Turner, specifically, as impaired. Thus, Phillips 66 is entitled to summary judgment on Turner's "regarded as" claim.

### 3. Traditional ADA Claim

Finally, Turner contends sufficient evidence exists to create a genuine dispute of material fact as to whether he suffered from a physical impairment that substantially limited one or more of his major life activities—that is, a traditional ADA claim. In reply, Phillips 66 contends that Turner is precluded from asserting a traditional ADA claim because he did not allege a traditional ADA claim in his EEOC Charge and therefore failed to exhaust his administrative remedies.

"Title I of the ADA requires a plaintiff to exhaust [his] administrative remedies before filing suit." *Jones v. U.P.S., Inc*., 502 F.3d 1176, 1183 (10th Cir. 2007). Exhaustion begins with filing a Charge of Discrimination with the EEOC. *Id*. "A plaintiff's claim in federal court is

generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.,* 900 F.3d 1166 (10th Cir. 2018). The court must construe the EEOC charge to determine whether plaintiff exhausted his administrative remedies with respect to a particular claim. *Jones*, 502 F.3d at 1186. However, "the <u>charge</u> must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]" *Smith v. Cheyenne Ret. Inv'rs, L.P.,* 904 F.3d 1159, 1164 (10th Cir. 2018) (quoting *Jones*, 502 F.3d at 1186); *see also Jones*, 502 F.3d at 1186 ("[E]ach discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted.") (internal quotations omitted). "The ultimate question is whether 'the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the EEOC charge.]" *Smith,* 904 F.3d at 1164 (quoting *Martin v. Nannie & the Newborns, Inc*., 3 F.3d 1410, 1416 n. 7 (10th Cir. 1993)).

Turner's Charge indicates "disability" in response to "cause of discrimination based on." [Doc. 24-1, p. 78]. The particular facts alleged in support are as followed:

1. Employer required medication information of me beyond what was business-related and consistent with business necessity because I took Sudafed and/or Zantac, neither of which interefered [*sic*] with my job or its performance.

2. Employer considered me disabled/unable to do my job for reasons set forth in 1 above.

3. At all times, I was capable of doing my job safely and appropriately.

4. Nevertheless, Employer fired me in discrimination as set forth above.

[*Id.*].   Liberally construing the EEOC Charge, the court concludes Turner exhausted his administrative remedies with respect to a traditional ADA claim.  Turner checked "disability" as the basis for his claim in the EEOC Charge, and the ADA defines disability as both having a physical impairment that substantially limits major life activities and "regarded as" having a disability.  *See Sink v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 1085, 1091 (D. Kan. 2001).  Further, the Charge alleges that Turner took Zantac and Sudafed, that he was capable of performing his job safely and appropriately, but that Phillips 66 regarded him as disabled due to his taking the medication.  [Doc. 24-1, p. 78].  Turner claims disability based on allergies.  Inquiries related to Turner's use of allergy medication, including whether it was necessary due to an impairment, would reasonably grow out of the facts alleged in the Charge.  Thus, Turner's traditional ADA claim is reasonably related to his "regarded as" claim, and Turner adequately exhausted his administrative remedies with respect to a traditional ADA claim.

The court now turns to the merits of Turner's traditional ADA claim.  To establish a prima facie claim for discrimination under the ADA, a plaintiff must demonstrate: (1) he or she is "disabled"; (2) he or she is qualified, with or without reasonable accommodation, to perform the essential functions of the job; and (3) the employer discriminated against him or her because of the disability.  *Jones,* 502 F.3d at 1189.  As previously stated, with respect to a traditional ADA claim, the ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]"  42 U.S.C. § 12102(1)(A).  "To satisfy this definition, 'a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities.'"  *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011)

(quoting *Berry v. T-Mobile USA, Inc*., 490 F.3d 1211, 1216 (10th Cir. 2007)). Turner has not done so.

In *Felkins v. City of Lakewood*, the Tenth Circuit discussed a plaintiff's evidentiary burden when opposing a motion for summary judgment following enactment of the ADA Amendments Act of 2008. 774 F.3d 647 (10th Cir. 2014). Although the court noted regulations implementing the ADAAA provide that the "comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis," such regulations did not apply to proof that plaintiff's limitation was *caused by* the alleged impairment. *Id.* at 652-53 (quoting 29 C.F.R. § 1630.2(j)(1)(v)). As to causation, general evidentiary principles apply. *Id.* at 652-53. Thus, where plaintiff presented only her own declaration that she suffered from avascular necrosis which caused her difficulties in walking, standing, and lifting, the declaration was inadmissible "insofar as they diagnose her condition as avascular necrosis or state how that condition causes limitations on major life activities, for those are clearly matters 'beyond the realm of common experience and . . . require the special skill and knowledge of an expert witness.'" *Id.* at 652 (quoting *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011)). Thus, in *Felkins*, "the Tenth Circuit . . . specifically rejected an ADA plaintiff's attempt to establish the existence of a physical impairment only by self-diagnosis of an impairment." *Jennings*, 2015 WL 3465834, at *6.

Here, Turner presents only his own verified statement that: (1) he suffered from allergies and (2) when they flared up, they disabled him from being able to work unless he took medication. [Doc. 25-1, p. 1, ¶ 3]. However, Turner's self-diagnosis that he suffered from allergies is inadmissible as a diagnosis or to state how his allergies limited his ability to work. *See Jennings*,

2015 WL 3465834, at *6 ("Plaintiff's lay opinion that she has a mold allergy is inadmissible and is not an acceptable substitute for medical evidence or the testimony of a medical expert."). Although Turner also submits a letter from his healthcare provider, Linda S. Woodruff, the letter neither establishes that Turner suffers from allergies nor that his allergies limited his ability to work. The letter states only that Turner's medication includes "OTC sudafed" and that "[Turner] does have medical conditions that require the above listed medications." [Doc. 25-1, p. 3]. However, even assuming that the "medical condition" referred to was allergies, it is well-established that "[a] medical diagnosis is insufficient, rather, 'the ADA requires plaintiffs to offer evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.'" *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010) (quoting *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 603 (11th Cir. 2008)). Thus, Turner failed to offer admissible evidence that he suffered from a physical impairment that substantially limited one or more major life activities and therefore no genuine dispute of material facts exists as to whether Turner was "disabled" for purposes of a traditional ADA claim.

Even assuming Turner was "disabled" as defined in § 12102(1)(A), Turner presents no evidence that Phillips 66's stated reason for terminating him—the positive drug test—was pretextual. *See Morgan*, 108 F.3d at 1323 ("If the employer comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief.") (internal quotations omitted). Turner offers no evidence that Phillips 66 believed the April 24 drug test result constituted a false positive. Rather, the evidence in the record establishes that Phillips 66 consistently believed in the accuracy of the April 24 drug test result. *See* [Doc. 24-2 and Doc. 24-5]; *see also Williams*, 849 F.3d at 900

("[Plaintiff] focuses on the accuracy of Aetna's report and on whether he was in fact drug dependent. But our role isn't to ask whether the employer's decision was wise, fair or correct. Rather, we are only concerned with whether [defendant] held a good-faith belief when it took its actions.") (internal citations and quotations omitted). Thus, Phillips 66 is entitled to summary judgment as to Turner's traditional ADA claim.

### B. Oklahoma Drug Testing Statute

Based on the foregoing, the court has concluded that summary judgment is appropriate as to Turner's federal claims. The remaining claim—violation of the Oklahoma drug testing statute—is a state law claim.

Phillips 66 removed this case on the basis of federal question jurisdiction, 28 U.S.C. § 1331. *See* [Doc. 2]. In the Tenth Circuit, "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid,* 149 F.3d 1151, 1156 (10th Cir. 1998); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("A federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity . . . ."); 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"). Without the ADA claim, no claims remain that implicate federal law and the court has no basis for jurisdiction. Given the limited authority interpreting the Oklahoma drug testing statute, Oklahoma courts are better equipped to interpret and apply its provisions. Thus, the court declines to exercise supplemental jurisdiction over Turner's state law claim and remands this action to the District Court for Tulsa County, Oklahoma.

## VI.  Conclusion

WHEREFORE, defendants' Motion for Summary Judgment [Doc. 24] is granted as to plaintiff Richard Turner's claims under the Americans with Disabilities Act.  Because the court grants summary judgment as to plaintiff's claims implicating federal jurisdiction and declines to exercise supplemental jurisdiction over the state-law claim, the Court Clerk is hereby directed to remand this action to the District Court for Tulsa County, Oklahoma.

IT IS SO ORDERED this 29th day of March, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE